# DECLARATION OF HSING C. LIU

1. I am presently employed by the Federal Communications Commission ("FCC") as an Electronics Engineer in the International Bureau ("IB"), Satellite Division ("SD"), System Analysis Branch ("SAB"). I have served in this position since April 1999. I am familiar with my assignments and work activities in my Branch.

2. The statement made in this declaration are based upon my personal knowledge and encounters with colleagues, managers, and officials, and information made known to me within my official duties and about which I have become knowledgeable.

1. By the year end in 2003, Mr. George Sharp, who was then a Physicist in the System Analysis Branch of the International Bureau ("IB"), applied a GS-15 position opening at the Agency's Office of Engineering Technology ("OET"). Mr. William Howden, then the Branch Chief of the System Analysis Branch of the Agency's Satellite Division ("SD"), International Bureau ("IB"), approached to Mr. Sharp to counteroffer him a GS-15 position which was later posted as VAN 04-0068DF. I was not aware this until later time.

2. VAN 04-0068DF was posted from December 30, 2003 through January 14, 2004. I desired to apply, but I was not eligible because the job title was restricted to Physicist. However, the job title fitted perfectly to Mr. Sharp's background so he could apply.

3. A complaint was filed within the agency about that the job title "Physicist" on the VAN 04-0068DF was unnecessarily restrictive and did not match the job description; the requirements in the job description were tasks that could be performed by engineers. I was not aware this until later time.

4.     On February 4, 2004, VAN 04-0068 was re-posted by VAN 04-0100, from February 4, 2004 through February 19, 2004. The job title was changed to Physicist/ Electronics Engineer Interdisciplinary. I desired to apply.

5.     In a Branch meeting followed the post of VAN 04-0068, I inquired Mr. Howden about applying the position. Mr. Howden said that *the position was for George Sharp*. Mr. Howden said the same in later conversations. At that time under Mr. Howden's supervision, there were three engineers: Mr. Frank Peace at GS-15 grade, Ms. Shahnaz Ghavami and I at GS-14 grade, and a physicist: Mr. Sharp at GS-14 grade. Both Ms. Ghavami and I are non-native born immigrants.

6.     After the meeting, I spoke to Mr. Sharp. Mr. Sharp said that he had been applying a GS-15 position opening in OET. Mr. Howden counter-offered him a GS-15 position by VAN 04-0068, which was re-posted by VAN 04-0100. I congratulated Mr. Sharp for his promotion and Mr. Sharp responded with the phrase "knock on the wood".

7.     I did not aware what Mr. Howden did was in violation of the law. I believed that it was manager's discretion to decide whom to hire and to fire. Although I desired to apply, I was discouraged by Mr. Howden's words "the position was for George Sharp". These words delivered a message that "you should not apply because the position was for George Sharp". Since Mr. Howden was my supervisor and the selecting officer, if he said the position was for Mr. Sharp, then it would have to be Mr. Sharp. I reasoned that he as the hiring manager had already made the decision; it would be a waste of effort. My previous experience with Mr. Howden made me too timid to disobey. These were the reasons I did not apply for VAN 04-0100.

8.     On February 5, 2004 I spoke more about my desire of promotion opportunity to Mr. Howden. Mr. Howden said in order to be considered for promotion, I needed to do special projects for him in addition to the regular duties. He put it like a promotional requirement, so I agreed. At the time, I did not know that this was a disparate treatment –

2

Mr. Howden did not require Mr. Sharp to do the same for considering his promotion. I found out later in conversations with Mr. Sharp.

9. Mr. Sharp received a GS-15 position offer from OET by his earlier application. He accepted the OET offer and announced his leaving IB for OET.

10. According to Mr. Sharp in later time, Mr. Howden extended him a final offer of the GS-15 position at the IB Personnel Exit Briefing. Mr. Sharp declined the offer. There were at least two other IB senior officials who attended the briefing.

11. On March 4, 2004, Mr. Howden received the Merit Promotion Certificate for VAN 04-0100 with three top candidates referred. Mr. Howden marked "NS" by Mr. Sharp's name because of Mr. Sharp had refused his position offer. At the time there were only two candidates left for selection. They were Ms. Qihui Huang and Mr. Donald Campbell. Mr. Howden selected Mr. Campbell and denied Ms. Huang. I did not aware this until later time.

12. On March 9, 2004, since Mr. Sharp was left the Branch, I inquired Mr. Howden if he would repost the position. I desired to apply the vacant position and did not suspect any thing wrong doing.

13. On March 10, 2004 Mr. Howden replied that he already selected another candidate who had *excellent qualification, advanced degree, and an inch thick application and papers*. He would not re-post VAN 04-0100. I relieved my desire to apply because at the time there was nothing to suggest what he said was false.

14. On the contrary to what he said, however, Mr. Howden selected Mr. Campbell who did not earn advanced degree and submitted an inch thick application and papers; he denied Ms. Huang who has two advanced degrees and had submitted an inch thick application and papers. Ms. Huang, a non-native born immigrant, was denied job

3

interview and selection. I did not know this at the time. I learned this much later in conversations with the Agency's EEO Counselor.

15.    On March 15, 2004 Mr. Campbell declined the selection. Mr. Howden did not offer a position to Ms. Huang, the third candidate on the Merit Promotion Certificate. I did not know this until later time.

16.    Knowing that if the VAN were to re-post Ms. Ghavami and I would apply, Mr. Howden closed the position. We did not know this until later time.

17.    April 2, 2004: no person came to assume the position after a month long waiting, I was concerned. Mr. Howden said that he would not post the position again, and that he would be available to discuss it in the following week. I wanted to find it out. There was no suspicion of discriminations at the time.

18.    April 16, 2004: Mr. Howden was not available for discussion in the week followed April 2, 2004, so the discussion was postponed to a special session immediate after the Branch meeting on Friday, April 16, 2004. Mr. Howden and all three System Analysis Branch engineers attended (Mr. Howden, Mr. Frank Peace, Ms. Shahnaz Ghavami, and the plaintiff). Mr. Howden said the Branch did make job offer to Mr. Sharp, and to at least one candidate who did not take the offer. Mr. Howden said he would like to see the position kept open. Because the objectives were changed, the position was closed by the management decision. All programming responsibility was now shifted to the Information Technology Center ("ITC"). At the end of the meeting, Mr. Howden agreed to talk to his manager Mr. Thomas Tycz (the Division manager) for his reconsideration of re-posting the VAN 04-0100 since it was not filled. I regained hope for applying.

19.    July 13, 2004: Ms. Ghavami had conversation about job opportunities with Mr. Howden in his office. Mr. Howden said that he had planned to bring in people from outside the Bureau to fill the vacant GS-15 position before it was closed. Mr. Howard

also said that when Mr. Frank Peace a GS-15 engineer in the Branch retired, he would close his GS-15 position as well. When Ms. Ghavami asked if he would consider promoting her or me for the GS-15 position, Mr. Howden became very frustrated and abruptly stopped the conversation. I did not learn this until later time.

20. July 14, 2004: I hoped the reconsideration between the managers could eventually bring me an opportunity to apply the vacant GS-15 position. Mr. Howden did not get back to talk about his discussion with Mr. Tycz. After considerable time waiting, I pressed on inquiries.

21. July 19, 2004: upon my second inquiry, Mr. Howden finally said: *"I'm reminded that I didn't respond to your earlier e-mail regarding a posting for GS-15. I thought everyone knew that there is a hiring freeze. In any case, I did speak with Tom (Thomas Tycz) last week and confirmed that there are no plans to post a GS-15 position for the Systems Analysis Branch."*
Despite every effort I had spent and cooperated, I could not get Mr. Howden to open the door of opportunity for me. I began to believe that he never wanted to give me an opportunity. This seemed evident now when I pieced everything had happened previously together. In contrast to the way he had treated Mr. Sharp, he provided me disparate treatments (I learned this term later on the EEO seminar). Looked back, I began to understand why the job title was listed for "Physicist" in VAN 04-0068, and why he had warned me "the position was for George Sharp". This was the day I began to realize that I had being discriminated by my supervisor Mr. Howden. I did not know what to do.

22. July 21, 2004: I attended a seminar "Equal Employment Opportunity (EEO) Rights and Responsibilities Training for Employees" given at the Commission by Mr. Dexter Brooks, a United States EEOC attorney. The seminar was a turning point for me: it taught me my civil rights, the work place discriminations, the EEO complaint process, and anti-discrimination and retaliation laws. It awakened me.

22. August 24, 2004, for a month I debated if I should step forward to make a complaint. I feared Mr. Howden's intimidation and reprisal. I decided to speak out defending my rights. I contacted Ms. Paula-Ann Cech, the EEO Counselor.

23. August 31, 2004, a second interview with the EEO Counselor to file my complaint about the hostile work environment and means by which I was influenced not to apply for the GS-15 position and the disparate treatments in providing job opportunity. I requested the agency to investigate and to remedy the alleged discrimination by reposting the position announcement.

24. January 21, 2005: Ms. Cech met with Mr. Tycz, the Division Chief of IB, to apprise the discrimination allegation. Mr. Tycz said he did not recall that Mr. Howden had requested that the position be reopened in July 2004. In opposition to what Mr. Howden stated, there was no hiring freeze for inside hire in FCC on July 19, 2004. And in opposition to what Mr. Howden said, all programming responsibility was not shifted to the ITC; instead, the work has been farmed out to Mr. Sharp in the OET.

25. May 16, 2005, FCC Office of Workplace Diversity dismissed my discrimination complaint on the ground that "the employment slot for which you did not apply, had been withdrawn by the agency, and no one was ever selected. Thus, neither you nor any other employee suffered a cognizable harm or loss due to the agency's discretionary action in removing the vacancy announcement from its posting. Your complaint will also be dismissed because the position was withdrawn and never filled. No harm was therefore suffered by you in this instance. Consequently, your complaint fails to state viable claim of employment discrimination."

26. June 13, 2005, I appealed to EEOC of FCC's decision because my complaint was about being given disparate treatments and not providing equal opportunity. However, my complaint was not about seeking GS-15 selection. FCC was incorrect to conclude that I had no claim, and not to conduct investigation on the alleged discrimination.

27.  September 21, 2005, EEOC affirmed FCC's decision.

28.  October 21, 2005, I filed request for reconsideration of the EEOC's decision. I disputed that the reason I had not applied was due to Mr. Howden's influence and that my complaint was about unequal opportunity so the argument whether I had applied was not relevant.

29.  October 31, 2005, FCC filed opposition for reconsideration.

30.  November 16, 2005, EEOC denied my request for reconsideration.


_/s/ Hsing C. Liu_                                             6/6/2006
―――――――――――――                                          ―――――――
Hsing C. Liu                                                        Date

Signed under the penalty of perjury